IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



JAN 2 1 2026

CLERK, U.S. DISTRICT COURT
TEXAS EASTERN

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| SUSHIL MANOJKUMAR PATEL (01) | § | Case No. 6:25-CR-118 |
| ███████████████████████ | § | JUDGES BARKER / LOVE |
| ███████████████████████ | § | SEALED |
| ███████████████████████ | § | |
| MUTHUKRISHNAN PALRAJ (05) | § | |
| ███████████████████████ | § | |
| ███████████████████████ | § | |
| ███████████████████████ | § | |
| ███████████████████████ | § | |

## SECOND SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### Introduction

At all times relevant to this Indictment:

1.     Defendant 1, **Sushil Manojkumar Patel**, was a resident of the Republic of India, present in the United States of America, in the Eastern District of Texas and elsewhere, on a tourist visa, having entered the United States on or about May 5, 2025.

2.     Defendant 2, ████████████████ was a resident of the Republic of India, present in the United States of America on a student visa.

3.     Defendant 3, █████████ was a resident of the Republic of India, present in the United States of America on a student visa.

4.     Defendant 4, ██████████████ was a resident of the Republic of India, present in the United States of America on a student visa.

Indictment – Page 1

5.     Defendant 5, **Muthukrishnan Palraj** was a resident of the Republic of India, present in the United States of America on a work permit.

6.     Defendant 6, ███████████████████████ was a resident of the Republic of India, present in the United States of America on a student visa.

7.     Defendant 7, ████████████████████ was a resident of the Republic of India, present in the United States of America on a student visa.

8.     Defendant 8, ████████████████████ was resident of the Republic of India, present in the United States of America on a student visa.

9.     Defendant 9, ███████████████ was resident of the Republic of India, present in the United States of America on a student visa.

10.    Defendant 10, ████████████████████ was resident of the Republic of India, present in the United States of America on a student visa.

11.    All the defendants acted as part of a conspiracy. Numerous co-conspirators, several operating out of the Republic of India were involved and the identities of these are both known and unknown to the Grand Jury.

12.    Victim J.C. was a 74-year-old man, residing in Rusk County, Texas, in the Eastern District of Texas.

13.    Victim J.M. was a 80-year-old man residing in Dallas County, Texas, in the Northern District of Texas.

14.    Victim T.B was a 65-year-old woman residing in Livingston Parish, Louisiana, in the Middle District of Louisiana.

Indictment – Page 2

15.    Victim D.W. was a 74-year-old woman residing in Franklin County, Texas, in the Eastern District of Texas.

16.    Victim C.W. was a 76-year-old man residing in Gregg County, Texas, in the Eastern District of Texas.

17.    Victim R.R. was a 91-year-old man residing in Tom Green County, Texas, in the Western District of Texas.

18.    Victim N.P. was a 72-year-old woman residing in Los Angeles County, California, in the Central District of California.

19.    Victim W.S. was a 76-year-old woman residing in Hardy County, West Virginia, in the Northern District of West Virginia.

20.    Victim E.M. was a 82-year-old woman residing in Los Angeles County, California, in the Central District of California.

21.    Victim A.L. was a 80-years-old woman residing in Broward County, Florida, in the Southern District of Florida.

22.    Victim J.W. was a 55-year-old man residing in O'Brien County, Iowa, in the Northern District of Iowa.

23.    Victim P.W. was a 78-year-old woman residing in Pulaski County, Missouri, in the Western District of Missouri,

The Fraud Scheme

24.    The objective of the scheme was for defendants  and their co-conspirators to unlawfully and unjustly enrich themselves by defrauding victims to unlawfully obtain

their money by means of false and fraudulent pretenses, representations, and promises. The fraud scheme follows this playbook:

25.    THE CALL CENTERS: Conspirators situated in the Republic of India act as the front-line fraudsters. They operate "call centers" that initiate the fraud via wire communications. Specifically, the call centers will place phone calls, send emails, or direct online "pop-up" windows to a victim – typically targeting the elderly – and represent themselves as federal agents, a bank fraud department, or large companies such as Amazon or PayPal. Once they have identified a potential victim, they will hand the case over to a fraud specialist – the "Closer" – who will target the fraud specifically to the victim.

26.    THE CLOSER: Closers will initiate repeated personal contact with the victim and engage in highly personalized fraud. Over time, the victims will be tricked into believing that they are under federal investigation. Not only will the Closers tell them this, but they will also provide the victims with forged and fraudulent documents, purporting to be, for example, federal indictments or official press releases. Ultimately, the victim will be convinced to post a monetary bond to avoid being arrested.

In other versions, the victim is tricked into believing that they are at risk of federal prosecution due to a mistake done by themselves, or that certain actions are necessary to protect their assets from fraudulent activity.

In most cases, the victims are then instructed that the bond, asset transfer, or other type of payment, must be posted in gold or cash and are provided specific instructions on

**Indictment – Page 4**

how to conduct the transfer to an undercover agent/employee. The victims are also frequently directed to make an initial transaction via Bitcoin ATM.

27.    MEDIATORS. After the Closer has convinced the victim to "post bond" or otherwise transfer their assets, a Mediator is enlisted. Their role is to facilitate the transfer of the gold to a Courier. This is done by offering the job to a network of Couriers, one of whom acts as the undercover agent to pick up the gold or cash from the victim. Both the victim and the Courier will know a specific password to verify the transaction.

Upon exchange of the password, the Courier obtains possession of the gold or currency, and the Mediator will instruct him where to go and deliver the gold to a Collector who will handle the last part of the scheme. The mediator oversees and verifies that the gold or cash is passed along to the Collector from the Courier.

28.    THE COURIERS: The Courier's role is to pick up the gold or cash from the victims. The mediators will offer a pick-up to the network of Couriers, and one of them will get the job – typically a Courier who is closest geographically to the pick-up location. From there, the Courier gets instructions directly from the mediator, who is also in contact with the Closer. Utilizing a unique password or token, the Courier will obtain the gold or cash from the victim. Next, the Courier is instructed on where to meet the Collector, who will take possession of the gold or cash and pay the Courier for his services. It is possible for a Courier to organize his own subset of Couriers, thereby extending the geographical pick-up area he can cover.

29.    The COLLECTORS: Collectors are tasked with obtaining gold and cash from the Courier and to get the gold or cash to its ultimate location. The Collector is also

Indictment – Page 5

responsible for paying the Courier his share of the fraudulently obtained proceeds. After receiving the gold or cash, the Collectors will launder and move the funds through his network, ultimately placing the funds into the Hawala network, from where it will be distributed to others as proceeds of the unlawful activity.

30.     THE HAWALA NETWORK: Hawala is an ancient method of money transfer originating in South Asia. In essence, the network operates as an underground banking system that enables the movement of funds without physical transfer of currency. The network relies on trust and operates outside traditional banking systems.

## Count One

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

The preceding paragraphs of this indictment are included herein as if included verbatim.

From on or about February 1, 2025, and continuing through on or about November 6, 2025, the exact dates being unknown to the Grand Jury, in Smith County, Texas, within the Eastern District of Texas, and elsewhere,

**SUSHIL MANOJKUMAR PATEL (1)**



**MUTHUKRISHNAN PALRAJ (5)**

along with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343, wire fraud; that is, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

<u>The scheme targeting Victim J.C.</u>

1.    Victim J.C., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Drug Enforcement Administration (DEA). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.C. was convinced to post a $157,550 bond, to be paid in gold bullion. He was then instructed where to meet with an undercover agent to transfer the gold. In reality, the undercover agent was **Sushil Manojakumar Patel**, who knew that Victim J.C. was being defrauded.

In furtherance of the conspiracy, **Sushil Manojakumar Patel** took several steps all within the Eastern District of Texas: (1) he personally contacted with the Mediator, from whom he received his instructions; (2) he met with Victim J.C. at the agreed location in Tyler, Smith County, Texas; (3) he provided the agreed password to Victim J.C. and affirmed that he was "with the DEA"; and (4) he took physical possession of the gold bullion.

<u>The scheme targeting Victim J.M.</u>

2.     Victim J.M., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as representatives of the large financial companies PayPal and Bank of America. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.M. was convinced to transfer over one million dollars of his elderly mother's funds. A portion of the funds were transferred via a bitcoin ATM, while the majority were paid in gold bullion. Victim J.M. met with a Courier on four occasions to transfer the gold. The Courier in each case was **Sushil Manojakumar Patel**, who knew that Victim J.M. was being defrauded.

<u>The scheme targeting Victim T.B.</u>

3.     Victim T.B., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission and The Department of Treasury. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim T.B. was convinced to transfer her retirement savings, totaling over $300,000, to be paid in gold bullion. T.B. transferred the gold to a Courier, **Sushil Manojakumar Patel**, who knew that Victim T.B. was being defrauded.

## The scheme targeting Victim D.W.

4.      Victim D.W., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim D.W. was convinced to empty her bank accounts and transfer the cash to an agent. T.B. met with Couriers posing as federal agents on multiple occasions. On one occasion, the Courier was **Sushil Manojakumar Patel**, who knew that Victim T.B. was being defrauded, and on another occasion, the Courier was **Muthukrishnan Palraj**, who also knew that Victim T.B. was being defrauded.

## The scheme targeting Victim C.W.

5.      Victim C.W., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as representatives of Texas Bank & Trust Fraud Department. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim C.W. was convinced to transfer over a one million dollars to the fraud conspiracy. A portion of the funds were transferred via a bitcoin ATM, while the majority was paid in gold bullion. C.W. transferred gold to Couriers on several occasions. On one occasion, the Courier was **Muthukrishnan Palraj**, who knew that Victim C.W. was being defrauded, and on another occasion, the Courier was ███████████████ who also knew that C.W. was being defrauded.

Indictment – Page 9

## The scheme targeting Victim R.R.

6.      Victim R.R., an elderly individual, and his wife were targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim R.R. was convinced that his social security number had been compromised and that he needed to convert his financial assets to gold, and transfer it to the United States Treasury until the compromise could be addressed. T.B. met with Couriers posing as FTC agents on multiple occasions and transferred approximately $900,000 worth of gold. On one occasion, the Courier was **Muthukrishnan Palraj**, who knew that Victim R.R. was being defrauded, and on another occasion, the Courier was ███████████████ who also knew that Victim R.R. was being defrauded.

## The scheme targeting Victim N.P.

7.      Victim N.P., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of United States Department of the Treasury. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim N.P. was convinced that accounts had been compromised.  Initially, Victim N.P. was persuaded to transfer $18,000 to a Courier for the conspiracy. Subsequently, Victim N.P. was convinced to make another transfer, this

time of $15,000. The Courier who met with N.P. to pick to the $15,000 was ██████████ ████████████, who also participated in coordinating the transfer of the money.

<u>The scheme targeting Victim W.S.</u>

8.    Victim W.S., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim W.S. was convinced that her accounts had been compromised.  Initially, Victim W.S. transferred more than $30,000 to a Courier for the conspiracy. Subsequently, Victim W.S. was persuaded to transfer over $300,000 to a jewelry store in California, for the purchase of gold. When the wiring bank stopped the transfer due to suspicion of fraud, Courier ████████████████████ who knew W.S. was being defrauded, contacted the bank to inquire about the status of the wire, stating that he was supposed to pick up the approximately $300,000 worth of gold from the jewelry store.

<u>The scheme targeting Victim E.M.</u>

9.    Victim E.M., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim E.M. was convinced to liquidate her funds, and convert the cash into gold. On two occasions, the conspirators arranged for a Courier to pick up

Indictment – Page 11

gold from E.M. On one of these occasions, the Courier was ███████████ who received direct instructions about the pick-up from **Sushil Manojakumar Patel**.

### The scheme targeting Victim A.L.

10.    Victim A.L., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim A.L. was convinced to conduct several bitcoin transfers and to convert large amounts of money to gold. The gold was picked up by Couriers for the conspiracy on several occasions, totaling over $1,000,000 through the various transfers. On one of the occasions, the Courier was ███████████ who was in contact with and received instructions regarding the pick-up from **Sushil Manojkumar Patel**.

### The scheme targeting Victim J.W.

11.    Victim J.W., was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of Homeland Security, and the Drug Administration Agency (DEA). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.W. was convinced to withdraw large amounts of cash, then package it in accordance with the "DEA's" instructions, and hand the packages over to a Courier. J.W. handed packages of cash to Couriers for the conspiracy on many occasions, totaling over $1,000,000. On one of these occasions, the Courier was

██████████████████████ on a different occasion the Courier was ██████████

████████ and one pick-up was done by ██████████████████

<u>The scheme targeting Victim P.W</u>

12.     Victim P.W., an elderly individual, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves being from Amazon. After initial conversations about an alleged fraudulent purchase, P.W. was referred to a person claiming to be with the United States Marshalls. P.W. was coerced into delivering gold to Couriers on two separate occasions, under the claim that the gold was being legally seized as evidence. One of the Couriers was ██████████████ and the other Courier was ████

████████

<u>The Scheme not limited to the specific instances described</u>

13.     On many other occasions **Sushil Manojkumar Patel,** ██████████████ ██████████████ **Muthukrishnan Palraj,** ██████████████ ████████████████████████████ ██████████████ have acted as a courier or coordinated other couriers in the fraud scheme, targeting several other victims not specifically listed in this indictment.

In violation of 18 U.S.C. § 1349.

Indictment – Page 13

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

As the result of committing one or more of the foregoing offenses alleged in this indictment, the defendants herein shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c):

1. any property constituting, or derived from, and proceeds the defendants obtained, directly or indirectly, as the result of such violations;

2. any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations, and/or;

3. any and all firearms, ammunition and accessories seized from the defendants.

**Cash Proceeds:**

A sum of money equal to $12,945,228.52 in United States currency and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by the defendant as a result of the offense alleged in this indictment, for which the defendant is personally liable.

**Substitute Assets**

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

    (a)    cannot be located upon the exercise of due diligence;
    (b)    has been transferred or sold to, or deposited with a third person;
    (c)    has been placed beyond the jurisdiction of the court;
    (d)    has been substantially diminished in value; or
    (e)    has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendants.

By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States

Indictment – Page 14

and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c).

A TRUE BILL

_____

GRAND JURY FOREPERSON

JAY R. COMBS
UNITED STATES ATTORNEY

_____          _____ 1/21/26 _____
EMIL MELCHIOR MIKKELSEN                                Date
Assistant United States Attorney

Indictment – Page 15

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

UNITED STATES OF AMERICA      §
     §
v.      §
     §
SUSHIL MANOJKUMAR PATEL (01)      §      Case No. 6:25-CR-118
     §      JUDGES BARKER / LOVE
     §      SEALED
     §
MUTHUKRISHNAN PALRAJ (05)      §
     §
     §
     §
     §
     §

## NOTICE OF PENALTY

### Count One

VIOLATION:      18 U.S.C. § 1349 (conspiracy to commit wire fraud)

PENALTY:      Imprisonment of not more than twenty (20) years; the greater of a fine not to exceed $250,000 or two times the gross gain to the Defendant, or two times the loss to the victim, or both such imprisonment and fine; and a term of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT:      $100.00

Indictment -- Page 16