IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION



| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | **FILED** |
| v. | § | |
| | § | MAR 1 8 2026 |
| | § | |
| SUSHIL MANOJKUMAR PATEL (01) | § | CLERK, U.S. DISTRICT COURT |
| DEVANSH JIGNESH BHAVSAR (02) | § | TEXAS EASTERN |
| AKSHAI LOKRAY (03) | § | |
| NAREN KUKKAPALLI (04) | § | |
| MUTHUKRISHNAN PALRAJ (05) | § | Case No. 6:25-CR-118 |
| RAVI CHANDA REDDY AMANGANTI (06) | § | JUDGES BARKER / LOVE |
| ███████████████ | § | |
| SHABBIR ALI MOHAMMED (08) | § | SEALED |
| ███████████████ | § | |
| JAY SURESHKUMAR RAKHOLIYA (10) | § | |
| ███████████████ | § | |
| PRUTHWIK GOUD GALLIPALLY (12) | § | |
| ███████████████ | § | |
| | § | |
| | § | |

## THIRD SUPERSEDING INDICTMENT

THE UNITED STATES GRAND JURY CHARGES:

### General Allegation

At all times relevant to this Indictment:

1.      Defendant 1, **Sushil Manojkumar Patel**, was a resident of the Republic of India, present in the United States of America, in the Eastern District of Texas and elsewhere, on a tourist visa, having entered the United States on or about May 5, 2025.

2.      Defendant 2, **Devansh Jignesh Bhavsar** was a resident of the Republic of India, present in the United States of America on a student visa.

3.      Defendant 3, **Akshai Lokray** was a resident of the Republic of India, present in the United States of America on a student visa.

4.      Defendant 4, **Naren Kukkapalli** was a resident of the Republic of India, present in the United States of America on a student visa.

5.      Defendant 5, **Muthukrishnan Palraj** was a resident of the Republic of India, present in the United States of America on a work permit.

6.      Defendant 6, **Ravi Chandra Reddy Amanaganti** was a resident of the Republic of India, present in the United States of America on a student visa.

7.      Defendant 7, ███████████████ was a resident of the Republic of India, present in the United States of America on a student visa.

8.      Defendant 8, **Shabbir Ali Mohammed** was resident of the Republic of India, present in the United States of America on a student visa.

9.      Defendant 9, ███████████████ was resident of the Republic of India, present in the United States of America on a student visa.

10.     Defendant 10, **Jay Sureshkumar Rakholiya** was resident of the Republic of India, present in the United States of America on a student visa.

11.     Defendant 11, ███████████████ was resident of the Republic of India, present in the United States of America on a student visa.

12.     Defendant 12, **Pruthwik Goud Gallipally** was resident of the Republic of India, present in the United States of America on a student visa.

13.     Defendant 13, ███████████ was resident of the Republic of India, present in the United States of America on a student visa.

14.     Defendant 14, ███████████ was resident of the Republic of India, present in the United States of America on a student visa.

15.     Defendant 15, ███████████ was resident of the Republic of India, present in the United States of America on a student visa.

16.     All the defendants acted as part of a conspiracy. Numerous co-conspirators, several operating out of the Republic of India were involved and the identities of these are both known and unknown to the Grand Jury.

## Count One

Violation: 18 U.S.C. § 1349
(Conspiracy to Commit Wire Fraud)

1.     The General Allegations section of the indictment is realleged and incorporated as though fully set forth herein.

2.     From on or about February 1, 2025, and continuing through on or about February 4, 2026, the exact dates being unknown to the Grand Jury, in Smith County, Texas, within the Eastern District of Texas, and elsewhere,

**SUSHIL MANOJKUMAR PATEL (1)**
**DEVANSH JIGNESH BHAVSAR (2)**
**AKSHAI LOKRAY (3)**
**NAREN KUKKAPALLI (4)**
**MUTHUKRISHNAN PALRAJ (5)**
**RAVI CHANDA REDDY AMANAGANTI (6)**
███████████████████████████
**SHABBIR ALI MOHAMMED (8)**
███████████████████████████

Third Superseding Indictment – Page 3

**JAY SURESHKUMAR RAKHOLIYA (10)**

███████████████████████████

**PRUTHWIK GOUD GALLIPALLY (12)**

███████████████████████████
███████████████████████████
███████████████████████████

along with others known and unknown to the Grand Jury, did knowingly and willfully combine, conspire, confederate, and agree to violate 18 U.S.C. § 1343, wire fraud; that is, to transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce any writings, signs, signals, pictures, and sounds for the purpose of executing a scheme and artifice to defraud and for obtaining money and property by means of false and fraudulent pretenses, representations, and promises.

## Object and Purpose of the Conspiracy

3.      The objective of the conspiracy was for defendants and their co-conspirators to unlawfully and unjustly enrich themselves by defrauding victims to unlawfully obtain gold, money, and other funds by means of false and fraudulent pretenses, representations, and promises.

## Manner and Means of the Conspiracy

The manner and means by which the defendants and their co-conspirators sought to accomplish the objects and purpose of the conspiracy was through a fraud scheme following this playbook:

4.      THE CALL CENTERS: Conspirators situated in the Republic of India act as the front-line fraudsters. They operate "call centers" that initiate the fraud via wire communications. Specifically, the call centers will place phone calls, send emails, or

Third Superseding Indictment – Page 4

direct online "pop-up" windows to a victim – typically targeting the elderly – and represent themselves as federal agents, a bank fraud department, or large companies such as Amazon or PayPal. Once they have identified a potential victim, they will hand the case over to a fraud specialist – the "Closer" – who will target the fraud specifically to the victim.

5.      THE CLOSER: Closers will initiate repeated personal contact with the victim and engage in highly personalized fraud. Over time, the victims will be tricked into believing that they are under federal investigation. Not only will the Closers tell them this, but they will also provide the victims with forged and fraudulent documents, purporting to be, for example, federal indictments or official press releases. Ultimately, the victim will be convinced to post a monetary bond to avoid being arrested.

In other versions, the victim is tricked into believing that they are at risk of federal prosecution due to a mistake done by themselves, or that certain actions are necessary to protect their assets from fraudulent activity.

In most cases, the victims are then instructed that the bond, asset transfer, or other type of payment, must be posted in gold or cash and are provided specific instructions on how to conduct the transfer to an undercover agent/employee. The victims are also frequently directed to make an initial transaction via Bitcoin ATM.

6.      MEDIATORS. After the Closer has convinced the victim to "post bond" or otherwise transfer their assets, a Mediator is enlisted. Their role is to facilitate the transfer of gold to a Courier. This is done by offering the job to a network of Couriers, one of

**Third Superseding Indictment – Page 5**

whom acts as the undercover agent to pick up the gold or cash from the victim. Both the victim and the Courier will know a specific password to verify the transaction.

Upon exchange of the password, the Courier obtains possession of the gold or currency, and the Mediator will instruct him where to go and deliver the gold to a Collector who will handle the last part of the scheme. The mediator oversees and verifies that the gold or cash is passed along to the Collector from the Courier.

7.     THE COURIERS: The Courier's role is to pick up the gold or cash from the victims. The mediators will offer a pick-up to the network of Couriers, and one of them will get the job – typically a Courier who is closest geographically to the pick-up location.  From there, the Courier gets instructions directly from the mediator, who is also in contact with the Closer. Utilizing a unique password or token, the Courier will obtain the gold or cash from the victim. Next, the Courier is instructed on where to meet the Collector, who will take possession of the gold or cash and pay the Courier for his services. It is possible for a Courier to organize his own subset of Couriers, thereby extending the geographical pick-up area he can cover. Couriers are also referred to as "Runners."

8.     The COLLECTORS: Collectors – sometimes referred to as "Token Guys" – are tasked with obtaining gold and cash from the Courier and getting the gold or cash to its ultimate location. The Collector is also responsible for paying the Courier his share of the fraudulently obtained proceeds. After receiving gold or cash, the Collectors will launder and move the funds through his network, often utilizing businesses to export the illegally obtained gold out of the United States, ultimately placing the funds into the

**Third Superseding Indictment – Page 6**

Hawala network, from where it will be distributed to others as proceeds of the unlawful activity.

9.      THE HAWALA NETWORK: Hawala is an ancient method of money transfer originating in South Asia. In essence, the network operates as an underground banking system that enables the movement of funds without physical transfer of currency. The network relies on trust and operates outside traditional banking systems.

## Acts in Furtherance of the Conspiracy

In furtherance of the conspiracy and to achieve its objectives and purpose, the following acts, among others, were committed in the Eastern District of Texas and elsewhere:

### The scheme targeting Victim J.C.

10.      On or about July 15, 2025, through August 19, 2025, Victim J.C., an elderly individual residing in Rusk County, Texas, in the Eastern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Drug Enforcement Administration (DEA). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.C. was convinced to post a $157,550 bond, to be paid in gold bullion. He was then instructed where to meet with an undercover agent to transfer the gold. In reality, the undercover agent was **Sushil Manojakumar Patel**, who knew that Victim J.C. was being defrauded.

Third Superseding Indictment – Page 7

In furtherance of the conspiracy, **Sushil Manojakumar Patel** took several steps all within the Eastern District of Texas: (1) he personally contacted with the Mediator, from whom he received his instructions; (2) he met with Victim J.C. at the agreed location in Tyler, Smith County, Texas; (3) he provided the agreed password to Victim J.C. and affirmed that he was "with the DEA"; and (4) he took physical possession of the gold bullion.

### The scheme targeting Victim J.M.

11.     On or about July 24, 2025, through August 13, 2025, Victim J.M., an elderly individual residing in Dallas County, Texas, in the Northern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as representatives of the large financial companies PayPal and Bank of America. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim J.M. was convinced to transfer over one million dollars of his elderly mother's funds. A portion of the funds were transferred via a bitcoin ATM, while the majority were paid in gold bullion. Victim J.M. met with a Courier on four occasions to transfer the gold. The Courier in each case was **Sushil Manojakumar Patel**, who knew that Victim J.M. was being defrauded.

### The scheme targeting Victim T.B.

12.     On or about July 21, 2025, through August 5, 2025, Victim T.B., an elderly individual residing in Livingston Parish, Louisiana, in the Middle District of Louisiana,

Third Superseding Indictment – Page 8

was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission and The Department of Treasury. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim T.B. was convinced to transfer her retirement savings, totaling over $300,000, to be paid in gold bullion. T.B. transferred the gold to a Courier, **Sushil Manojakumar Patel**, who knew that Victim T.B. was being defrauded.

### The scheme targeting Victim D.W.

13.     On or about July 9, 2025, through July 23, 2025, Victim D.W., an elderly individual residing in Franklin County, Texas, in the Eastern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim D.W. was convinced to empty her bank accounts and transfer the cash to an agent. T.B. met with Couriers posing as federal agents on multiple occasions. On one occasion, the Courier was **Sushil Manojakumar Patel**, who knew that Victim T.B. was being defrauded, and on another occasion, the Courier was **Muthukrishnan Palraj**, who also knew that Victim T.B. was being defrauded.

**Third Superseding Indictment – Page 9**

## The scheme targeting Victim C.W.

14.     On or about April 24, 2025, through July 15, 2025, Victim C.W., an elderly individual residing in Gregg County, Texas, in the Eastern District of Texas, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as representatives of Texas Bank & Trust Fraud Department. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim C.W. was convinced to transfer over one million dollars to the fraud conspiracy. A portion of the funds were transferred via a bitcoin ATM, while the majority was paid in gold bullion. C.W. transferred gold to Couriers on several occasions. On one occasion, the Courier was **Muthukrishnan Palraj**, who knew that Victim C.W. was being defrauded, and on another occasion, the Courier was **Ravi Chandra Reddy Amanaganti**, who also knew that C.W. was being defrauded.

## The scheme targeting Victim R.R.

15.     On or about June 13, 2025, through July 22, 2025, Victim R.R., an elderly individual residing in Tom Green County, Texas, in the Western District of Texas, and his wife were targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim R.R. was convinced that his social security number had been compromised and that he

**Third Superseding Indictment – Page 10**

needed to convert his financial assets to gold, and transfer it to the United States Treasury until the compromise could be addressed. T.B. met with Couriers posing as FTC agents on multiple occasions and transferred approximately $900,000 worth of gold. On one occasion, the Courier was **Muthukrishnan Palraj**, who knew that Victim R.R. was being defrauded, and on another occasion, the Courier was ████████████████████, who also knew that Victim R.R. was being defrauded.

### The scheme targeting Victim N.P.

16.     On or about April 15, 2025, through April 16, 2025, Victim N.P., an elderly individual residing in Los Angeles County, California, in the Central District of California, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of United States Department of the Treasury. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim N.P. was convinced that accounts had been compromised.  Initially, Victim N.P. was persuaded to transfer $18,000 to a Courier for the conspiracy. Subsequently, Victim N.P. was convinced to make another transfer, this time of $15,000. The Courier who met with N.P. to pick to the $15,000 was **Devansh Jignesh Bhavsar**, who also participated in coordinating the transfer of the money.

### The scheme targeting Victim W.S.

17.     On or about June 1, 2025, through June 18, 2025, Victim W.S., an elderly individual residing in Hardy County, West Virginia, in the Northern District of West

Third Superseding Indictment – Page 11

Virginia, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim W.S. was convinced that her accounts had been compromised. Initially, Victim W.S. transferred more than $30,000 to a Courier for the conspiracy. Subsequently, Victim W.S. was persuaded to transfer over $300,000 to a jewelry store in California, for the purchase of gold. When the wiring bank stopped the transfer due to suspicion of fraud, Courier **Devansh Jignesh Bhavsar**, who knew W.S. was being defrauded, contacted the bank to inquire about the status of the wire, stating that he was supposed to pick up the approximately $300,000 worth of gold from the jewelry store.

<u>The scheme targeting Victim E.M.</u>

18.     On or about August 13, 2025, through November 5, 2025, Victim E.M., an elderly individual residing in Los Angeles County, California, in the Central District of California, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim E.M. was convinced to liquidate her funds, and convert the cash into gold. On two occasions, the conspirators arranged for a Courier to pick up gold from E.M. On one of

**Third Superseding Indictment – Page 12**

these occasions, the Courier was **Akshai Lokray**, who received direct instructions about the pick-up from **Sushil Manojakumar Patel.**

## The scheme targeting Victim A.L.

19.    On or about July 16, 2025 through October 18, 2025, Victim A.L., an elderly individual residing in Broward County, Florida, in the Southern District of Florida, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of the Federal Trade Commission (FTC). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim A.L. was convinced to conduct several bitcoin transfers and to convert large amounts of money to gold. The gold was picked up by Couriers for the conspiracy on several occasions, totaling over $1,000,000 through various transfers. On one of the occasions, the Courier was ███████████████. On another occasion, the Courier was **Naren Kukkapalli**, who was in contact with and received instructions regarding the pick-up from **Sushil Manojkumar Patel.**

## The scheme targeting Victim J.W.

20.    On or about February 1, 2025, through November 6, 2025, Victim J.W. residing in O'Brien County, Iowa, in the Northern District of Iowa, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves as agents of Homeland Security, and the Drug Enforcement Administration (DEA). Using fraudulent pretenses,

**Third Superseding Indictment – Page 13**

representations, promises and inherent threats of arrest and legal consequences, Victim J.W. was convinced to withdraw large amounts of cash, then package it in accordance with the "DEA's" instructions, and hand the packages over to a Courier. J.W. handed packages of cash to Couriers for the conspiracy on many occasions, totaling over $1,000,000. Among the Couriers picking up from Victim J.W. on separate dates, were **Ravi Chandra Reddy Amanaganti, Shabbir Ali Mohammed,** ███████████

██████████████████.

### The scheme targeting Victim P.W

21.    On or about July 11, 2025, through July 25, 2025, Victim P.W., an elderly individual residing in Pulaski County, Missouri, in the Western District of Missouri, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves being from Amazon. After initial conversations about an alleged fraudulent purchase, P.W. was referred to a person claiming to be with the United States Marshalls. P.W. was coerced into delivering gold to Couriers on two separate occasions, under the claim that the gold was being legally seized as evidence. One of the Couriers was **Naren Kukkapalli** and the other Courier was **Jay Rakholiya.**

### The scheme targeting Victim J.A.

22.    On or about July 29, 2025, through September 10, 2025, Victim J.A., and elderly individual was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators

Third Superseding Indictment – Page 14

represented themselves being from a local bank. After initial conversations about an alleged fraudulent purchase, Victim J.A. was referred to a person claiming to be an agent with the United States Treasurer's Office. Victim J.A. was convinced to withdraw large amounts of cash, and ship the cash concealed to other participants in the conspiracy. Subsequently, J.A. received communications from people purporting to be with the Department of Treasury instructing her to withdraw more funds and provide the fund in person to an "agent". J.A. also received a voicemail threatening her on her life. The Couriers who ultimately showed up to collect the money were ███████████ and **Pruthwik Goud Gallipally**.

### The scheme targeting Victim N.M.

23.    On or about May 14, 2025, through June 3, 2025, Victim N.M. an elderly individual residing in Petersburg Borough, Alaska, in the District of Alaska, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented being with the government and provided a purported federal ID number. The victim was transferred to another "agent" who claimed to be with the Drug Enforcement Administration (DEA). Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim N.M. was convinced to wire an initial sum of money. Subsequently, the victim was told to withdraw to be delivered in person. The Couriers picking up the first cash delivery were ███████████ and Shubham Patel. **Devansh Jignesh Bhavsar** facilitated and organized the pickup remotely.

**Third Superseding Indictment – Page 15**

## The scheme targeting Victim S.G.

24.    On or about May 15, 2025, Victim S.G., and elderly individual residing in Roane County, Tennessee, with in the Central District of Tennessee, was targeted by the Indian call centers with the fraud scheme. Through wire communications, namely email, internet, and phone calls, the conspirators represented themselves to be with the Federal Trade Commission (FTC), and explained that they had a warrant for the victim's arrest. Using fraudulent pretenses, representations, promises and inherent threats of arrest and legal consequences, Victim S.G. was convinced to provide her financial assets to the scammers, utilizing deliveries of both gold, silver, gift cards and cryptocurrency. On one pickup occasion, the victim provided gold and silver in bars and coins to ████████████ - a Courier for the conspiracy.

## The scheme not limited to the specific instances described

25.    On many other occasions, **Defendants** listed in this indictment have acted as couriers, mediators, collectors and participants in the laundering network; or coordinated other couriers, mediators, collectors and participants in the laundering network for the fraud scheme, targeting several other victims not specifically listed in this indictment.

In violation of 18 U.S.C. § 1349.

## NOTICE OF INTENT TO SEEK CRIMINAL FORFEITURE
### Pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

As the result of committing one or more of the foregoing offenses alleged in this indictment, the defendants herein shall forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

1.   any property constituting, or derived from, and proceeds the defendants obtained, directly or indirectly, as the result of such violations;

2.   any of the defendants' property used, or intended to be used, in any manner or part, to commit, or to facilitate the commission of, such violations, and/or;

3.   any and all firearms, ammunition and accessories seized from the defendants.

### Cash Proceeds:

A sum of money equal to $21,504,357.68 in United States currency and all interest and proceeds traceable thereto, representing the amount of proceeds obtained by the defendant as a result of the offense alleged in this indictment, for which the defendant is personally liable.

### Substitute Assets

If any of the property described above as being subject to forfeiture, as a result of any act or omission of the defendants:

(a)   cannot be located upon the exercise of due diligence;
(b)   has been transferred or sold to, or deposited with a third person;
(c)   has been placed beyond the jurisdiction of the court;
(d)   has been substantially diminished in value; or
(e)   has been commingled with other property which cannot be subdivided without difficulty;

it is the intent of the United States, pursuant to 21 U.S.C. § 853(p), to seek forfeiture of any other property of the defendants up to the value of the above forfeitable property, including but not limited to all property, both real and personal owned by the defendants.

**Third Superseding Indictment – Page 17**

By virtue of the commission of the offenses alleged in this indictment, any and all interest the defendants have in the above-described property is vested in the United States and hereby forfeited to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c)

A TRUE BILL

_____
GRAND JURY FOREPERSON

JAY R. COMBS
UNITED STATES ATTORNEY

_____                    3/18/26
EMIL MELCHIOR MIKKELSEN          Date
Assistant United States Attorney

Third Superseding Indictment – Page 18

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TYLER DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | |
| | § | |
| SUSHIL MANOJKUMAR PATEL (01) | § | |
| DEVANSH JIGNESH BHAVSAR (02) | § | |
| AKSHAI LOKRAY (03) | § | |
| NAREN KUKKAPALLI (04) | § | |
| MUTHUKRISHNAN PALRAJ (05) | § | Case No. 6:25-CR-118 |
| RAVI CHANDA REDDY AMANGANTI (06) | § | JUDGES BARKER / LOVE |
| ▮▮▮▮▮▮▮▮▮▮ | § | |
| SHABBIR ALI MOHAMMED (08) | § | SEALED |
| ▮▮▮▮▮▮▮▮▮▮ | § | |
| JAY SURESHKUMAR RAKHOLIYA (10) | § | |
| ▮▮▮▮▮▮▮▮▮▮ | § | |
| PRUTHWIK GOUD GALLIPALLY (12) | § | |
| ▮▮▮▮▮▮▮▮▮▮ | § | |
| | § | |
| | § | |

## NOTICE OF PENALTY

### Count One

VIOLATION:              18 U.S.C. § 1349 (conspiracy to commit wire fraud)

PENALTY:                Imprisonment of not more than twenty (20) years; the
greater of a fine not to exceed $250,000 or two times the
gross gain to the Defendant, or two times the loss to the
victim, or both such imprisonment and fine; and a term
of supervised release of not more than three (3) years.

SPECIAL ASSESSMENT:     $100.00

Third Superseding Indictment -- Page 19